108 F.3d 261
 97 Cal. Daily Op. Serv. 1738, 97 Daily Journal
D.A.R. 3267
Charles Edward MOORE, Jr., Petitioner-Appellee-Cross-Appellant,
v.
Arthur CALDERON, Warden, Respondent-Appellant-Cross-Appellee.
 Nos. 95-99009, 95-99013.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 16, 1997.
Decided March 7, 1997.
As Amended March 20, 1997.
 
 Peggy S. Ruffra, Deputy Attorney General, San Francisco, California, (Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, and Gerald A. Engler, Supervising Deputy Attorney General, San Francisco, California, on the brief), for respondent-appellant-cross-appellee.
 Morgan Chu, Irell and Manella, Los Angeles, California, (Spencer Bendell, Irell & Manella, Los Angeles, California, and Marianne D. Bachers, San Francisco, California, on the brief), for petitioner-appellee-cross-appellant.
 Appeals from the United States District Court for the Central District of California, David V. Kenyon, District Judge, Presiding. D.C. No. CV-91-05976-KN.
 Before: FERGUSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 Opinion by Judge O'SCANNLAIN; Concurrence by Judge FERGUSON.
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide whether a writ of habeas corpus should issue when a state court denies a murder defendant's request to proceed pro se weeks before trial begins.
 
 
 2
 * Charles Edward Moore, Jr. was charged with the double murder of Robert and Hattie Crumb. On July 22, 1983, the California Superior Court, where Moore's case was to be tried, appointed an attorney to represent Moore. The case was set for trial on March 5, 1984. On that date, the prosecutor and defense counsel appeared before the Master Calendar Court and asked for a continuance, which the court granted until March 9, 1984. Moore was not present in the courtroom. On March 9, the case was continued to March 16, 1984. Again, Moore was not present.
 
 
 3
 In a letter to the court dated March 10, 1984, Moore explained that, contrary to his requests, he had not been brought into the courtroom on the two previous trial dates, that he had doubts about his court-appointed lawyer, and that he wanted the court to "appoint me co counsil [sic] with another lawyer or allow me to go pro per, which is my constitutional right of 'self representation' under the Sixth Amendment." When he appeared before the Master Calendar Court on March 16, the court engaged in a lengthy discussion with Moore-much of it out of the presence of the prosecution-about his dissatisfaction with his lawyer and his desire to represent himself, to have co-counsel or advisory counsel appointed, or to have a second lawyer appointed. At the conclusion of the colloquy, the judge denied Moore's requests for co-counsel, advisory counsel, or a second lawyer, but did not rule on the self-representation request.
 
 
 4
 Moore appeared before the court again on March 19, and the judge again engaged Moore in a colloquy about his self-representation request. Moore stated that, in order to represent himself, he would need a continuance to prepare for trial. The prosecution explained that, although it had no objection to Moore's request, delaying the trial would impose a hardship on the prosecution and on the numerous out-of-state witnesses who had planned to be present for trial. The court then denied Moore's request to represent himself, stating that it would "interfere with the orderly administration of justice to continue this case" because a courtroom was waiting to begin Moore's trial. The court also noted that witnesses would be inconvenienced, and that Moore's attorney was ready to proceed.
 
 
 5
 The court transferred Moore's case to another courtroom for the disposition of other pending pretrial motions. Those motions occupied another week. The trial did not commence until March 26-over two weeks after Moore made his request to proceed pro se.
 
 
 6
 At the conclusion of the trial, the jury found Moore guilty of the murders of Robert and Hattie Crumb, and Moore was sentenced to death. The California Supreme Court affirmed the judgment on direct appeal, People v. Moore, 47 Cal.3d 63, 252 Cal.Rptr. 494, 762 P.2d 1218 (1988), and eventually denied a total of eight habeas petitions.
 
 
 7
 In 1991, Moore filed this habeas petition in the district court, presenting twenty-seven claims. After granting a stay of execution, the district court entertained a motion to dismiss some of Moore's claims for failure to exhaust, which it eventually denied. In 1993, the court noted that summary judgment might be appropriate on some of Moore's claims. Thus, in May 1994, Moore moved for summary judgment on three claims of his petition, and Warden Calderon (hereinafter referred to as "California") cross-moved for summary judgment on other of Moore's claims. In 1995, the district court granted summary judgment in favor of Moore on two of his claims (involving his pre-trial and mid-trial requests to proceed pro se), and summarily adjudicated a number of other claims in favor of California. On that basis, the court granted Moore's petition for the writ, ordering that Moore either be retried within 60 days or be released. California appealed from that decision, and Moore cross-appealed from the district court's denial of his other claims.
 
 
 8
 California promptly moved the district court for a stay pending appeal, which it denied. Our court, Moore v. Calderon, 56 F.3d 39 (9th Cir.1995), and Justice O'Connor in her capacity as Circuit Justice for the Ninth Circuit, Calderon v. Moore, No. A-910 (June 9, 1995) (unpublished order), denied subsequent requests for a stay pending appeal. Thereafter, California granted Moore a new trial, which prompted us to dismiss this case as moot. The Supreme Court reversed and remanded. Calderon v. Moore, --- U.S. ----, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996). After we heard argument on the merits, the Supreme Court granted a stay pending disposition of these appeals. Calderon v. Moore, --- U.S. ----, 117 S.Ct. 1027, 137 L.Ed.2d 212 (1997). We now turn to the merits of these appeals.
 
 II
 
 9
 The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") worked substantial changes to the law of habeas corpus. Of specific relevance to this appeal are the changes to 28 U.S.C. § 2254(d), which now reads:
 
 
 10
 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
 
 
 11
 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 
 
 12
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
 
 
 13
 California claims that the 1996 amendment should apply to this case, which was pending when the legislation was enacted.
 
 
 14
 Our court, sitting en banc, has ruled that the amendments do not apply to pending cases. Jeffries v. Wood, 103 F.3d 827 (9th Cir.1996). The Supreme Court, however, has granted certiorari in a case which will be argued in the October 1996 Term to address this question. Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996), cert. granted, --- U.S. ----, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). Regardless of the resolution of the retroactivity issue, however, we are persuaded that, under either version of § 2254(d), Moore is entitled to the writ. See Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996) (resolving merits under current and prior versions of § 2254); Berryman v. Morton, 100 F.3d 1089, 1104 (3d Cir.1996) (same); Ayala v. Speckard, 89 F.3d 91, 96-97 (2d Cir.1996) (same), amended on other grounds, 102 F.3d 649 (2d Cir.1996).
 
 III
 
 15
 Under the old version of § 2254(d), we look to the decisions of the Supreme Court and of this court in deciding whether a writ should issue. In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that the Sixth Amendment right to assistance of counsel included a right to represent oneself.[1] Our court has since added a gloss to Faretta establishing a bright-line rule for the timeliness of Faretta requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay. Savage v. Estelle, 924 F.2d 1459, 1463 n. 7 (9th Cir.), cert. denied, 501 U.S. 1255, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991); United States v. Smith, 780 F.2d 810, 811 (9th Cir.1986); Armant v. Marquez, 772 F.2d 552, 555-56 (9th Cir.1985), cert. denied, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 902 (1986); Fritz v. Spalding, 682 F.2d 782, 784 (9th Cir.1982).
 
 
 16
 Under the old version of § 2254(d), these cases establishing a "jury empanelment" rule for timeliness compel our decision here. The jury was not empaneled when Moore made his request. Furthermore, the trial court made no finding that Moore's request was a tactic for delay, and the record does not suggest that it was such a tactic. Thus, under our case law, Moore's request was timely, and he is entitled to the writ.
 
 
 17
 California's argument that habeas relief is barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), has no merit. "In Teague, the Court held that new constitutional rules of criminal procedure may not be applied retroactively to cases for which direct review had been completed prior to the decision creating the new rule." Campbell v. Wood, 18 F.3d 662, 676 (9th Cir.1994). Although our "jury empanelment" rule for the timeliness of Faretta motions might have been a "new rule" when it was announced in 1982, see Fritz, 682 F.2d at 784; Maxwell v. Sumner, 673 F.2d 1031, 1036 (9th Cir.), cert. denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982), it is not a new rule for Moore because it was announced before his conviction became final. (Indeed, it was announced before Moore was tried and convicted.) Teague does not bar relief for Moore.[2]
 
 
 18
 California also contends that the timeliness of a Faretta request is not a federal constitutional question, but rather a question of state procedural law. Since federal habeas relief must be based on a violation of federal law, California contends that the district court erred by issuing the writ when a state law question was involved. In at least two cases, however, we have granted the writ when a California court failed to follow the "jury empanelment" rule. Armant, 772 F.2d at 558; Maxwell, 673 F.2d at 1036. We could not have granted relief in those cases unless the timeliness of a Faretta request is a matter of federal constitutional law. We are bound by Armant and Maxwell, and reject California's argument.
 
 IV
 
 19
 Section 2254(d), as amended, prohibits issuing the writ unless the State court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision may not be overturned on habeas review, for example, because of a conflict with Ninth Circuit-based law, but rather a writ may issue only when the state court decision is "contrary to, or involved an unreasonable application of," an authoritative decision of the Supreme Court. Childress v. Johnson, 103 F.3d 1221, 1224-26 (5th Cir.1997); Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996); see Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996).
 
 
 20
 The only Supreme Court decision to discuss the timeliness of a request to proceed pro se is the Faretta decision itself. Our first inquiry is thus whether Faretta "clearly established" a rule of law regarding the timeliness of a request. In Faretta, the Court twice described the timing of Faretta's request to represent himself: it was made "weeks before trial," 422 U.S. at 835, 95 S.Ct. at 2541, and "well before the date of trial," id. at 807, 95 S.Ct. at 2527. The Court's acknowledgment of the timing of Faretta's request was neither a recitation of the background facts of the case nor obiter dictum; instead, it is mentioned not only in the opening paragraphs, but also in the very breath with which the Court announced its decision. Id. at 835, 95 S.Ct. at 2541. It is properly considered necessary to the Court's decision, and therefore is a holding of the Court. See Export Group v. Reef Industries, Inc., 54 F.3d 1466, 1472 (9th Cir.1995). As such, it is "clearly established Federal law, as determined by the Supreme Court of the United States."
 
 
 21
 If the state court decision in this case was "contrary to" the Federal law clearly established by Faretta, then the writ may properly be granted.[3] Indeed, the relevant facts in this case are identical to those in Faretta. Like Faretta, Moore made his request "weeks before trial." It is undisputed that Moore's waiver of his right to counsel was knowing and intelligent. By failing to grant Moore's timely request, the trial court abridged Moore's right to self-representation under the Sixth Amendment. The writ of habeas corpus should issue.
 
 V
 
 22
 Because we affirm the district court's issuance of the writ based on Moore's pretrial request to proceed pro se, we do not reach Moore's additional contentions. Except as ordered by the United States Supreme Court, the renewed motion currently pending before this court for a stay of the district court's order is DENIED as moot. The district court's decision granting the writ to Moore is AFFIRMED.
 
 
 23
 FERGUSON, Circuit Judge, concurring.
 
 
 24
 I am pleased to concur in Judge O'Scannlain's concise and precise opinion.
 
 
 25
 I write only to explain that while courts of appeal have adopted a timely requirement to a Faretta motion, the Supreme Court did not make the constitutional right of self representation subject to any conditions except knowledge and intelligence.
 
 
 26
 The Court did not require that the right be exercised before trial. During the course of a trial, counsel may become incapable for many reasons--injury, disbarment, misconduct. For any number of reasons a defendant in that instance may not want a mistrial--he perceives that the trial has proceeded in his favor and doesn't want the prosecution to start all over again with rehabilitated witnesses. He may want to represent himself during the balance of the trial. Faretta grants him that right.
 
 
 
 [1]
 The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI
 
 
 [2]
 Moreover, as we decide below, Moore is entitled to relief on the basis of Faretta alone
 
 
 [3]
 The timeliness of a Faretta request is a question of law. Armant, 772 F.2d at 556. Since the "contrary to" language governs questions of law, and the "unreasonable application of" language governs mixed questions of law and fact, we apply only the "contrary to" language. Accord Drinkard v. Johnson, 97 F.3d 751, 767 (5th Cir.1996); Lindh v. Murphy, 96 F.3d 856, 870 (7th Cir.1996), cert. granted, --- U.S. ----, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997)