**Dwayne A. DAVIS, Petitioner–Appellee,**

v.

**M.C. KRAMER, Respondent–Appellant.**

**No. 98–16122.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Decided Jan. 26, 1999.

, As Amended March 10, 1999.

Seth K. Schalit, Deputy Attorney General, San Francisco, California, for respondent-appellant M.C. Kramer.

Steven Kalar, Assistant Federal Public Defender and Geoffrey A. Hansen, Chief Assistant Federal Public Defender, San Francisco, California, for petitioner-appellee Davis.

Before: REINHARDT, NOONAN, and HAWKINS, Circuit Judges.

REINHARDT, Circuit Judge:

The state of California appeals the district court's order granting Dwayne Davis a writ of habeas corpus. We must determine whether the California courts' denial of Davis' state habeas petition, in which Davis alleged that his appellate counsel failed to satisfy the constitutional requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), was "contrary to" or an "unreasonable application of" clearly established federal law. *See* 28 U.S.C. § 2254(d). Because we conclude that it was, we affirm the decision of the district court that the writ issue.

## I.

In 1994, following a jury trial, Davis was convicted of first degree burglary. He was sentenced to eleven years in prison. In his appeal, Davis' appellate attorney limited her representation to filing a "no-merit brief" pursuant to the standards enunciated by the California Supreme Court in *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (Cal.1979). The brief merely recited the procedural history and facts of the case. Not only did the brief fail to identify any possibly meritorious arguments, it flatly failed to point to anything in the record that might have warranted an appeal. The brief simply lodged a request that the court "independently review the entire record on appeal in this case."

Following his attorney's submission of this brief, Davis filed an appellate brief on his own behalf. He argued, *inter alia,* that his trial counsel was ineffective for failing to hire an independent fingerprint expert and for failing to conduct an investigation of the crime scene, and that the trial court erred in failing to instruct on a lesser included offense. In an unpublished decision, the California Court of Appeal affirmed the judgment of conviction.

In 1996, Davis filed pro se petitions for a writ of habeas corpus in California Superior Court, the California Court of Appeal, and the California Supreme Court. In each, he raised claims of ineffective assistance of trial and appellate counsel. Each court denied Davis' petition. The California Supreme Court summarily denied Davis' final petition in May of 1996. In December of 1996, Davis filed a pro se petition for a writ of habeas corpus in federal district court. In his federal petition, Davis again raised claims of ineffective assistance of trial and appellate counsel. He also argued, *inter alia,* that the evidence was insufficient to support his conviction, and that the trial court erred by failing to instruct the jury on the lesser included offense of trespass.

The district court granted Davis a writ. The court held that Davis had been denied the effective assistance of appellate counsel because that counsel's submission of a *"Wende"* brief, which raised no issues for appeal and pointed to no part of the record that might warrant such an appeal, failed to satisfy the federal constitutional standards enunciated in *Anders* and *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). It then denied all of Davis' remaining claims.

## II.

█ The state's primary argument in this appeal is that the district court's decision does not comport with the requirements of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). AEDPA wrought a number of changes in the statute governing habeas corpus proceedings by persons convicted of state offenses. Under § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States....

The state contends that the district court's decision was not supported by clearly established federal law, as determined by the United States Supreme Court, and was therefore improper. We reject the state's argument.[1]

In *Anders,* 386 U.S. at 739, 87 S.Ct. 1396, the defendant had been convicted of felony possession of marijuana. On appeal, Anders' court-appointed counsel concluded that any appeal would lack merit and so notified the

---

1. The district court noted that Davis' petition was subject to the requirements of § 2254(d). The court correctly held that "under AEDPA, the petition may not be granted ... unless the state court's adjudication of the claim: '(1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'"

court in a letter brief. Other than informing him of his right to file a pro se brief, Anders' counsel failed to do anything else on his behalf. *See id.* at 739–40, 87 S.Ct. 1396.

The Court delineated a court-appointed appellate counsel's duty to represent his client after "determin[ing] that there is no merit to the indigent's appeal." It began its analysis by reaffirming indigent defendants' right to counsel on appeal. The Court noted that it had "consistently held invalid those procedures 'where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself.'" *Id.* at 741, 87 S.Ct. 1396 (quoting *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)). It then wrote that this "constitutional requirement of substantial equality and fair process" is only realized where the court-appointed counsel "acts in the role of an active advocate in behalf of his client." *Anders,* 386 U.S. at 744, 87 S.Ct. 1396. In no uncertain terms, the court held that when appellate counsel simply submits a "no-merit letter," such as the one submitted by Anders' appellate counsel, he does not fulfill his constitutionally mandated responsibility to act in the "role of an active advocate." The court held that the submission of a no-merit letter is simply not "an adequate substitute for the right to full appellate review." *Id.* at 742, 87 S.Ct. 1396 (*quoting Eskridge v. Washington State Bd.,* 357 U.S. 214, 215, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958)).

The *Anders* Court then explained the procedure, required by the constitution, that an appellate counsel *must* follow if he determines that an appeal would be frivolous:

[I]f counsel finds his case to be wholly frivolous after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal. . . .

*Anders,* 386 U.S. at 744, 87 S.Ct. 1396.

· Significantly, *Anders* goes on to hold that when an appellate attorney fails to comply with these constitutional standards, and merely files a no-merit brief of the sort filed on behalf of Anders, the defendant is deprived of his right to counsel on appeal. *See id.* at 745, 87 S.Ct. 1396. In the Court's words, where counsel files a no-merit brief that does not comport with these standards, the defendant is left to "shift *entirely* for himself." *Id.* (emphasis added).

In *Robbins v. Smith,* 152 F.3d 1062 (9th Cir.1998), we applied *Anders* to a case factually indistinguishable in all relevant respects from the case at bar. Although *Robbins* was a pre-AEDPA case, because our decision there was simply an application of *Anders, Robbins'* reasoning is equally applicable in AEDPA cases.

In *Robbins,* defendant's appellate counsel filed a "no-merit brief" pursuant to *People v. Wende,* 158 Cal.Rptr. 839, 600 P.2d at 1074. *Robbins,* 152 F.3d at 1064. The brief filed in *Robbins* was indistinguishable from the brief filed by Davis' appellate counsel here: it "briefly outlined the facts surrounding Robbins's trial and failed to present any possible grounds for appeal. Included in the short document was a request that the court itself review the record for arguable issues." *Id.* As here, Robbins filed an appellate brief on his own behalf, but his appeal was unsuccessful. As here, the district court granted Robbins' petition for a writ of habeas corpus, holding that Robbins' appellate counsel had failed to satisfy the requirements established in *Anders.*

The state argued in *Robbins,* as it does here, that because the no-merit brief complied with the standards enunciated by the California Supreme Court in *Wende,* the district court erred in determining that the brief was insufficient under *Anders. Robbins,* 152

F.3d at 1066.[2] The *Robbins* court expressly rejected the state's argument. *Id.* at 1066–67. Relying on "the United States Supreme Court's requirements set forth in *Anders*," the court held that, despite the fact that the no-merit brief complied with *Wende*, the requirements of *Anders* "were not met." *Id.* at 1067. As the court wrote:

> The brief filed on Robbins's behalf completely failed to identify any grounds that arguably supported an appeal. Rather, it briefly summarized the procedural and historical facts of the case and requested that the state appellate court 'independently review the entire record for arguable issues.' Accordingly, the district court correctly found that Robbins's counsel did not comply with *Anders*.

*Id.*[3]

There would be no question that the case at bar is controlled by *Robbins* if this were a pre-AEDPA case. Again, the no-merit brief filed by Davis' appellate counsel is indistinguishable from the brief at issue in *Robbins:* both briefly summarized the procedural and factual histories of the cases, and requested that the state appellate court independently review the entire record for arguable issues. It is equally obvious, however, that in *Robbins* we were applying "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d), namely *Anders v. California.* *Robbins* was, in fact, *nothing more* than an application of *Anders* to facts indistinguishable from those presented here. In reaching its holding, the *Robbins* court wrote that "[o]ur obligation ... is to determine whether appellate counsel met his obligations *under the United States Supreme Court's requirements set forth in Anders and its progeny.*" *Robbins,* 152 F.3d at 1066–67 (emphasis added). The court's conclusion was that although a *Wende* brief had been filed, "the district court correctly found that *Robbins's counsel did not comply with Anders.*" *Id.* at 1067 (emphasis added). Finally, the court concluded that "the outcome of Robbins's case was *predetermined* by the controlling analysis provided by the Supreme Court in *Anders* ...." *Id.* at 1068 (emphasis added).

As *Robbins* makes clear, *Anders* clearly establishes that a no-merit brief such as the one filed by Davis' appellate attorney does not satisfy federal constitutional standards. Here, the state court decision we review is "contrary to ... clearly established Federal law, as determined by the Supreme Court." As in *Anders,* Davis' counsel left Davis to "shift entirely for himself," and thereby failed to fulfill the "role of an active advocate" required by the constitution. *Anders,* 386 U.S. at 745, 744, 87 S.Ct. 1396. Under *Anders,* Davis is entitled to a fresh appeal. The California court's denial of Davis' writ on his claim of ineffective assistance of appellate counsel is contrary to *Anders* and, in this regard, the District Court's decision comports with AEDPA.[4]

2. Under *Wende,* an appellate attorney may file a brief that merely "set[s] forth a summary of the proceedings and facts with citations to the transcript, raise[s] no specific issues, and call[s] upon the court to make a thorough review of the record to determine for itself whether there were any arguable issues." 600 P.2d at 1074. The nonexistence of arguable issues, moreover, may be inferred from counsel's failure to raise any, and counsel need not withdraw unless he explicitly describes the defendant's case as "frivolous." *Id.* at 1075.

3. In *United States v. Griffy,* 895 F.2d 561, 562 (9th Cir.1990), we held similarly that a brief, which satisfied the requirements of *Wende,* failed to comport with the constitutional requirements of *Anders.* The brief at issue in *Griffy* was, again, indistinguishable from the brief filed by Davis' counsel. The *Griffy* brief: "summarized the proceedings in the district court, recited the facts of the case, and stated that counsel had reviewed the record and 'located no specific issues' for appeal." *Id.* As here, counsel in *Griffy* "did not say the appeals were frivolous and did not move to withdraw," but asked the court to review the record. *Id.* Our holding in *Griffy* that the brief was inadequate was based entirely on Supreme Court precedent, namely *Anders.* Because, as *Anders* dictates, a brief must refer "to anything in the record that might arguably support the record," we held in *Griffy* that an attorney who files a *Wende* brief that fails to do so fails to fulfill his role as advocate, and leaves the defendant to "shift entirely for himself." *See id.* (quoting *Anders,* 386 U.S. at 744, 87 S.Ct. 1396).

4. In *Moore v. Calderon,* 108 F.3d 261, 265 (9th Cir.1997), the court held that *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) "clearly established" a rule of law regarding the timeliness of a request for self-representation. In dicta, the *Moore* court suggested that the timeliness rule was "necessary to the [*Faret-*

## III.

The state next argues that the district court erred in granting petitioner a writ without determining that Davis was prejudiced by his appellate counsel's performance.[5] In *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the Supreme Court considered the question whether a petitioner who suffers ineffective assistance under *Anders* must also show prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Penson,* petitioner's appellate counsel, like Davis' appellate counsel here, filed a no-merit brief. 488 U.S. at 77–78, 109 S.Ct. 346. The attorney then requested, and was granted, leave to withdraw from the case. As the Court wrote, "counsel was permitted to withdraw before the court reviewed the record on nothing more than a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief." *Id.* at 78, 109 S.Ct. 346. The state court subsequently granted petitioner 30 days in which to file an appellate brief pro se, but denied petitioner's request for the appointment of a new attorney. *See id.* The state court of appeals affirmed petitioner's conviction.[6]

The *Penson* Court first reiterated the holding of *Anders,* that "a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal." *Id.* at 80, 109 S.Ct. 346. It then held that "[c]ounsel's failure to

file such a brief left the Ohio court without an adequate basis for determining that he had performed his duty carefully to search the case for arguable error and also deprived the court of the assistance of an advocate in its own review of the cold record on appeal." *Id.* at 82, 109 S.Ct. 346. The state in *Penson,* argued, however, that even if the court had erred in granting appellate counsel's motion to withdraw and in failing to appoint new counsel, petitioner failed to show prejudice under *Strickland* and therefore the state court's affirmance of Penson's conviction was not in error.

The *Penson* Court completely rejected the claim that a showing of prejudice was required. As the Court wrote, requiring a showing of prejudice in cases such as this:

> would leave indigent criminal appellants without any of the protections afforded by *Anders.* Under the State's theory, if on reviewing the bare appellate record a court would ultimately conclude that the conviction should not be reversed, then the indigent criminal appellant suffers no prejudice by being denied his right to counsel. Similarly, however, if on reviewing the record the court would find a basis for reversal, then the criminal defendant also suffers no prejudice. In either event, the criminal appellant is not harmed and thus has no basis for complaint. Thus, adopting the State's view would render meaningless the protections afforded by *Douglas* and *Anders.*

488 U.S. at 86, 109 S.Ct. 346.

---

*ta* ] Court's decision, and therefore is a holding of the Court." *Moore,* 108 F.3d at 265. *Moore* does not establish a requirement that a rule be "necessary" to a Supreme Court "holding" in order to clearly establish Federal law. It merely points out that such was the case with respect to *Faretta.*

5. In its brief, the state also argues that the district court failed to determine whether counsel was "incompetent." By failing to comply with the requirements of *Anders,* counsel's performance failed to comport with constitutional standards. *See Anders,* 386 U.S. at 738, 87 S.Ct. 1396. No separate *Strickland* competence analy-

sis is called for when counsel fails to comply with *Anders.*

6. The court actually reversed petitioner's conviction on one count, on the ground that the trial court had given an erroneous jury instruction. *See Penson,* 488 U.S. at 79, 109 S.Ct. 346. It affirmed on all other counts noting that the petitioner had " 'suffered no prejudice' as a result of 'counsel's failure to give a more conscientious examination of the record' because the court had thoroughly examined the record· and had received the benefit of arguments advanced by counsel for petitioner's two codefendants." *Id.*

The state argues that *Penson* cannot control this case because in *Penson,* unlike in the case before us, the appellate counsel formally withdrew. According to the state, unless appellate counsel formally withdraws, the defendant is not "without representation," *id.* at 88, 109 S.Ct. 346, and thus it is inappropriate to apply *Penson*'s rule of presumed prejudice. We conclude, however, that while there is indeed a difference between *Penson* and the present case, a failure to apply *Penson* here would amount to an "unreasonable application of" clearly established federal law for purposes of 28 U.S.C. § 2254(d).

■ To date, we have not defined the term "unreasonable application" as used in § 2254(d), nor have we explained the difference between "contrary to" and "unreasonable application of," as used in that section. Clearly, however, both terms reflect the same general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court. Moreover, as some other circuits have correctly pointed out, the statutory terms are not amenable to a rigid distinction, *see, e.g., O'Brien v. Dubois,* 145 F.3d 16, 22 (1st Cir.1998), and have "overlapping meanings," *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998).

■ The two terms, read together, delineate the range of cases that warrant federal habeas relief under § 2254(d)(1). The terms overlap, and cases may fall into one or both classifications, depending on the circumstances. No purpose would be served by attempting to establish a fixed division or to give meaning to one that would exclude the other. Their purpose is the same: to ensure the objective that state courts follow controlling Supreme Court law.[7] For our purposes here, we need state only that a state court decision amounts to an unreasonable application of clearly established federal law where the state court fails to apply a legal principle, enunciated in one or more Supreme Court decisions, to a situation where such application is required by the force and logic of the Court's decision.[8]

It is true, as the state points out, that in *Penson* the appellate counsel formally withdrew from representing the petitioner, while in this case Davis' appellate counsel did not formally withdraw. *Anders,* 386 U.S. at 745, 87 S.Ct. 1396. The legal principles established in *Anders* and *Penson,* however, extend to cases in which appellate counsel does not formally withdraw. As noted, the *Anders* Court established the rule that when an appellate counsel files a "no-merit" brief that fails to comport with the standards enunciated in that case, he fails to fulfill his "role as advocate," and thereby leaves the defendant to "shift *entirely* for himself." *Id.* at 744, 745, 87 S.Ct. 1396 (emphasis added). Therefore, it is the appellate counsel's failure to conform with *Anders,* irrespective of counsel's decision to formally withdraw from a case, that leaves the defendant "entirely" to his own devices, and entirely without representation. It is also obvious that a defendant left to "shift entirely for himself" is a defendant left, in the words of the *Penson* Court, "completely without representation during

---

7. In a footnote in *Moore v. Calderon,* 108 F.3d 261, 265 n. 3 (9th Cir.1997), we stated in dicta that the "contrary to" test applies to questions of law, while the "unreasonable application" test applies to mixed questions of fact and law. While this is certainly true in some instances, in the *Moore* footnote we did not attempt a complete definition of these statutory terms, or set forth an inflexible rule. Nor do we here. We leave the terms with the full flexibility and potential for interchange with which we found them.

8. The definition we offer here is not intended to be exhaustive. Rather, it sets forth certain circumstances in which a state court's determination amounts to an "unreasonable application." There are, of course, other circumstances comprehended by the term we construe. If, for example, a state court applies a Supreme Court precedent in a context where such application is unreasonable, the decision would amount to an unreasonable application. So too would a state court decision that, in applying federal law, simply misinterprets the relevant Supreme Court precedent. *See, e.g., Green,* 143 F.3d at 870.

the appellate court's actual decisional process." *Penson*, 488 U.S. at 88, 109 S.Ct. 346. Accordingly, in a case where the defendant's appellate attorney does not formally withdraw but fails, nonetheless, to comport with the requirements of *Anders*, the defendant is "completely without representation" and *Penson*'s rule of presumed prejudice must be applied. A failure to apply the rule of presumed prejudice simply because the attorney has not formally withdrawn is a failure to apply the "principle of a precedent in a context where such failure is unreasonable." *Green*, 143 F.3d at 871. It therefore amounts to an "unreasonable application of" clearly established federal law, as determined by the Supreme Court.

■ This reading of *Penson*'s reach is supported by another circuit. In *Lofton v. Whitley*, 905 F.2d 885 (5th Cir.1990), the Fifth Circuit considered whether *Penson*'s rule of presumed prejudice extended to a situation where, as here, the appellate counsel had filed a deficient no-merit brief, but had not formally withdrawn from the case. As the Fifth Circuit wrote, "that counsel did not formally withdraw does not appear to be a significant distinction that would change the analysis from the presumed prejudice of *Penson* .... Lofton may have been formally represented by counsel, but the *failure to raise any grounds for appeal was the equivalent of his attorney's withdrawal.*" *Id.* at 888 (emphasis added). This part of the

court's opinion was based entirely on *Penson* and *Anders*. Accordingly, as the Fifth Circuit confirms, even where an attorney does not formally withdraw from the case, *Anders* and *Penson* dictate that the attorney's failure to comply with the requirements of *Anders* results in the deprivation of the defendant's right to counsel. *See Anders*, 386 U.S. at 745, 87 S.Ct. 1396; *Penson*, 488 U.S. at 83–85. Again, it is an unreasonable application of clearly established Supreme Court law not to extend *Penson*'s rule of presumed prejudice to this circumstance.[9]

## IV.

■ In granting Davis' writ on his claim of ineffective assistance of appellate counsel, the district court held that Davis had raised at least three arguable underlying claims: ineffective assistance of trial counsel, insufficiency of the evidence, and jury instruction error. Because the underlying claims were arguable, the district court held that Davis' appellate counsel should have raised them on direct appeal. The district court also conducted its own review of these same underlying claims and, under the standards enunciated in 28 U.S.C. § 2254(d), held that Davis did not "establish his entitlement to federal habeas relief" on any of them. The state argues that because the district court denied Davis' petition on the underlying claims, Davis cannot "vindicate" any federal right by returning to the state court for a fresh appeal. The state argues, in essence, that be-

9. That the failure to apply a rule of presumed prejudice in this case is an "unreasonable application of" federal law is also evident from the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, decided the same day as *Strickland*, the Supreme Court enunciated conditions where *Strickland*'s prejudice requirement does not apply. The Court held that there are circumstances "that are so likely to prejudice the accused" that prejudice should be presumed. *Id.* at 658, 104 S.Ct. 2039. In enumerating these circumstances, the Court wrote that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that

makes the adversary process itself presumptively unreliable." *Id.* at 659, 104 S.Ct. 2039. Significantly, *Cronic* cited *Anders* for the proposition that "the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.'" *Id.* at 656, 104 S.Ct. 2039 (*quoting Anders*, 386 U.S. at 743, 87 S.Ct. 1396). As we know from *Anders*, when a counsel files a no-merit brief that fails to comport with the standards enunciated there, the counsel fails to act "in the role of an advocate." Accordingly, *Cronic*, like *Penson*, dictates a rule of presumed prejudice in cases such as the one at bar. Failure to apply that rule amounts to an "unreasonable application of" federal law.

cause the district court denied Davis federal habeas relief on his underlying claims, Davis should be estopped from trying to litigate these claims in a state court appeal.

■ The state's argument is erroneous. The district court's denial of Davis' petition on his underlying claim indicates nothing more than the district court's conclusion that the state court's rejection of those claims was not contrary to federal law as established by the United States Supreme Court. In a direct appeal, the state court would apply an entirely different standard of review to Davis' claims. For this reason, regardless of the district court's ruling as to whether any of these alleged violations entitled him to habeas relief, Davis indeed may vindicate his federal rights by returning to the state court for a fresh appeal.[10]

Moreover, the state's argument, if accepted, would serve to import a prejudice requirement through the back door. The state asks this court to hold that Davis is not entitled to relief on his *Anders* claim because, it believes, his appeal will not succeed. As stated above, where a defendant suffers a violation of *Anders*, he need not show prejudice. He certainly need not show that he will prevail on appeal. *See, e.g., Penson*, 488 U.S. at 86, 109 S.Ct. 346. Because Davis' appellate counsel failed to comply with the constitutional requirements of *Anders*, Davis is entitled to a fresh state court appeal, irrespective of the district court's resolution of his federal habeas claim. By affording Davis this appeal, his federal right to effective assistance of counsel, enunciated in *Anders*, will be vindicated.

## V.

The district court's order granting Davis a writ on the issue of ineffective assistance of appellate counsel is therefore AFFIRMED.

---

**10.** A heightened standard of harmless error analysis, moreover, applies in federal habeas corpus proceedings. *See, e.g., Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under *Brecht*, in a federal habeas proceeding "the standard for determining whether habeas relief must be granted is whether … the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at 623, 113 S.Ct. 1710 (*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).