Ronald D. BAKER, Petitioner–
Appellant,

v.

CITY OF BLAINE; Louanne
Cranefield, Respondents–
Appellees.

No. 98–35378.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 10, 1999*

Opinion Filed March 6, 2000

Opinion Withdrawn Aug. 9, 2000

Order and Opinion Filed Aug. 9, 2000

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a) 2.

Sheryl Gordon McCloud, Seattle, WA, for the petitioner-appellant.

Matthew S. Elich, Nelson, Brinson & Elich, P.S., Bellingham, WA, for respondent-appellee.

Before: CANBY, BRUNETTI and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Dissent by Judge CANBY.

## ORDER

O'SCANNLAIN, Circuit Judge:

The opinion filed March 6, 2000 and reported at 205 F.3d 1138 is withdrawn. An opinion is filed simultaneously with this order.

With these changes, Judge Canby votes to grant the petition for rehearing and recommends granting the petition for rehearing en banc. Judge Brunetti and Judge O'Scannlain vote to deny the petition for rehearing and to deny the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED.

## OPINION

We must decide whether a state court's decision that a defendant was not denied his Sixth Amendment right to counsel is contrary to clearly established federal law.

I

On July 17, 1993, Ronald M. Baker was arrested on charges of driving without a valid operator's license ("DVOL"), driving under the influence of alcohol ("DUI"), and obstructing a public officer in Blaine, Washington. He pleaded guilty to the DVOL charge and was convicted of the other two by jury trial, at which he represented himself. He appealed his convictions (but not his guilty plea) through the Washington state court system, claiming that the court denied him his Sixth Amendment right to counsel at the arraignment and that he had not validly waived his right to counsel at his subsequent jury trial. He lost at all levels. He

then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court and alleged that he had been denied his right to counsel. A magistrate recommended granting the writ, but the City of Blaine ("City") filed objections noting discrepancies in the transcripts, and the district court dismissed Baker's petition. Baker timely brought this appeal.

## II

■ Baker, who appeared *pro se* at his jury trial, first asserts that (1) the trial court violated his Sixth Amendment right to counsel at arraignment and (2) he did not waive his right to counsel throughout the trial proceedings. Baker's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty

Act ("AEDPA"), 28 U.S.C. § 2254(d), and therefore is subject to its provisions.[1] The district court's review was limited to the standards of review set out in the AEDPA, as explained by the Supreme Court in *Williams v. Taylor*, —— U.S. ——, —— —— ——, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000); *Weighall v. Middle*, 215 F.3d 1058 (9th Cir.2000).[2]

■ Here, the Washington Supreme Court ruled that Baker's arraignment was not a critical stage of the proceedings to which the right to counsel attached. *See White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *State v. Jackson*, 66 Wash.2d 24, 400 P.2d 774, 778 & n. 1 (1965).[3] The record reveals that, although Baker pleaded guilty at his arraignment to one charge of driving without

1. 28 U.S.C.A. § 2254(d) (Supp.1999) provides:
    (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2. Prior to the *Supreme Court's decision in Williams*, a conflict existed both between the circuits and within the case law of this circuit. *See Weighall*, 215 F.3d at 1060–61 (describing intracircuit conflict). In *Moore v. Calderon*, 108 F.3d 261 (9th Cir.), *cert. denied*, 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997), we held that questions of law are governed by the "contrary to" clause of the AEDPA, whereas mixed questions of law and fact are governed by the "unreasonable application of" clause. *See id.* at 265 n. 3. Despite the fact that a later panel has no authority to disavow the holdings of an earlier panel, in *Davis v. Kramer*, 167 F.3d 494 (9th Cir.1999) *vacated*, —— U.S. ——, 120 S.Ct. 1001, 145 L.Ed.2d 947 (2000), a panel of this court described the *Moore* holding as dicta and cast doubt on the distinction between the "contrary to" and "unreasonable application of" prongs of the analysis under AEDPA. *Id.* at 500. The Supreme Court confirmed that the

two clauses have independent meanings, but went on to hold that the two clauses apply both to questions of law and mixed questions of law and fact. *See Williams*, —— U.S. at —— —— ——, 120 S.Ct. at 1519–21. The "contrary to" prong applies to a state court "conclusion opposite to that reached by th[e Supreme] Court on a question of law" as well as when "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Id.* at 1519–20, 120 S.Ct. 1495. The "unreasonable application of" prong applies at least to "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 1520–21. Thus, the Court has resolved the conflict in our cases.

3. The state court identified the correct legal rule announced by the Supreme Court in *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), and applied it to the facts of Baker's case. Thus the "unreasonable application of" prong applies. *See Williams*, 120 S.Ct. at 1520–21. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. We have held that to be unreasonable, the state court's application must be clearly erroneous. *See Van Tran v. Lindsey*, 212 F.3d 1143, 1152–54 (9th Cir.2000).

a valid operator's license, he has never contested nor appealed that conviction, and nothing else that occurred at arraignment was material to later trial proceedings. Thus, Baker had no constitutional right to counsel at his arraignment of which he could have been deprived.

■ The Washington Supreme Court also ruled that (1) the trial court adequately advised Baker before trial of his right to counsel and to court-appointed counsel if he could not afford to hire an attorney; (2) the trial court adequately warned Baker of the dangers and disadvantages inherent in proceeding without counsel; and (3) Baker knowingly and intelligently waived his right to counsel.[4] The transcript reveals that Baker was advised before trial of the disadvantages and risks of representing himself. The trial judge warned Baker that the charges he faced were serious and repeatedly advised him to seek representation. Baker stated he would represent himself "if I have to." Immediately before trial, when asked whether he had been previously advised of his right to counsel and if it was his own choice to appear without counsel, Baker answered "yes."

■ The dissent essentially argues that Baker's waiver of his right to counsel was not "knowing and intelligent" because the trial court erred in failing to make clear to Baker that he had a right to appointed counsel if he could not afford one. We are satisfied that the record leaves little doubt that Baker was well aware of this right.

First, the transcript reveals that Baker asked the court to appoint counsel for him. The judge responded that "you're entitled to a court appointed attorney if you qualify." As the judge explained, if Baker qualified financially for counsel, he would appoint one. If he did not, it would mean he could afford one. The court admonished Baker not to represent himself because of the seriousness of the charges and the difficulties of trying a case. Second, Baker went to the court clerk to request appointed counsel, an indication that he knew that he had the right to one. According to Baker, he was told by the clerk that he made too much money to qualify for counsel. In fact, much of this debate over whether Baker was adequately informed of his right to appointed counsel may be academic given the district court's finding that "Baker did *not* qualify for court-appointed counsel at the time of his trial." (emphasis in the original).[5] Third, when determining whether a defendant has knowingly and intelligently waived his rights, a court may look to the defendant's background, conduct, and prior familiarity with the criminal justice system. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). As the district court noted in finding Baker's waiver to have been knowing and intelligent, he had been previously convicted of driving under the influence, one of the same charges he faced in the trial of this case. Baker's conduct and the trial

4. Again, the "unreasonable application of" prong applies because the state court identified the correct legal rule announced by the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and applied it to the facts of Baker's case. *See Williams,* 120 S.Ct. at 1520–21.

5. The dissent asserts that this quotation "is not a factual finding that Baker had sufficient resources to hire counsel." At the very least, however, the statement indicates that Baker did not establish his financial eligibility for court-appointed counsel. After stating the Magistrate Judge's "erroneous factual impression" that "'Petitioner was indigent at the time of his trial and was therefore entitled to court appointed counsel,'" the district court

reported Blaine's argument that Baker never submitted the paperwork required to receive counsel. It then stated that "Contrary to the magistrate judge's assertions, Baker did *not* qualify for court-appointed counsel at the time of his trial. While Baker may have believed that he should have qualified and that he could not afford to retain private counsel, he is not challenging the court's administrative procedures for determining indigency." District Court Order Granting Respondents' Motion for Summary Judgment and Dismissing Habeas Corpus Petition, March 9, 1998, at 8. Most importantly, this entire discussion regarding Baker's attempts to procure court-appointed counsel highlights that Baker was well aware of his right to one.

judge's statements demonstrate that Baker knew that if he qualified financially he had the right to appointed counsel. Thus, although the district court did not have the benefit of *Williams*, it did not err when it found that the state court decisions concluding that Baker knowingly and intelligently waived his right to counsel were not an unreasonable application of clearly established federal law. *See Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

### III

Baker next asserts that the district court erred when it denied him an evidentiary hearing at which he could develop the factual basis for his habeas relief claims. This assertion is frivolous, because Baker himself canceled the hearing that had been scheduled.

### IV

■ Finally, Baker asserts that the district court applied the wrong standard of review when it deferred to the state court decisions. According to Baker, the district court should have reviewed *de novo* any state court holdings not supported by explicit citations to federal law. As noted above, the district court complied with the deferential standards required under the AEDPA consistent with the Supreme Court's later decision in *Williams*. The state court decisions to which the district court gave deference either cited directly to opinions of the Supreme Court of the United States or to cases which themselves rested on Supreme Court precedent, and the state court holdings were consistent with the reasoning of the cited cases. Thus, the district court did not err in applying the deferential standard of review.

The decision of the district court is AFFIRMED.[6]

---

**6.** Baker filed documents entitled Motion for Full Remand (June 1, 1999); Motion to Proceed Pro Se (August 2, 1999), and Motion to Delay Decision (September 17, 1999), which were referred to this panel for disposition.

CANBY, Circuit Judge, dissenting:

With all respect, I am unable to concur in the majority opinion and judgment. I view the state court decision as either contrary to, or an unreasonable application of, Supreme Court law, or both, as that law is set forth in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). To illustrate why, I set forth the pertinent facts from the state court proceedings.

At Baker's arraignment, the state judge announced to several defendants a list of rights they enjoyed. No mention was made of the right to counsel. Baker then was asked to plead, and he pleaded guilty to driving without a valid license, but not guilty of driving while intoxicated and obstructing an officer. He stated that he would like a jury. The following exchange is the entire discussion of counsel:

> Judge: And what do you anticipate doing with regard to counsel?
>
> Baker: I'll get a lawyer.
>
> Judge: Ok.
>
> Baker: If not, I'll defend myself.

The arraignment ended. As the majority indicates, Baker was not prejudiced directly at the arraignment, because he pleaded guilty only to a charge that he has never contested. The total lack of advice regarding a right to counsel had a continuing effect, however, for it was never properly remedied prior to or during trial.

At Baker's pretrial hearing, Baker made clear that he was without funds, but he was not adequately advised of his right to appointed counsel. Here is the entire exchange at that hearing:

> Judge: Okay, Mr. Baker, I take it that nothing has been resolved here. I again

To the extent that our affirmance of the district court does not dispose of these (and any other) pending motions, they are hereby denied.

would advise you that you have very serious charges and you're ill advised to try to represent yourself on them and that you're certainly not equipped to properly handle the jury trial on these charges, you would not know the proper objections to make or how to preserve the record for any appeal and I'm urging you to hire an attorney to represent you in this matter.

Baker: I wish I could, if I had the money.

Judge: Well, the money of being convicted when, perhaps you wouldn't be convicted, or not knowing your options, um, could cost you a heck of a lot more than an attorney costs you, so my advice to you is to hire an attorney. You're not equipped to handle a jury trial. You can do it if you choose, but I'm just telling you that's [sic] it's not a very smart move for you to make.

Baker: I know. If you want to appoint me a public defender.[1]

Judge: Pound wise and penny poor, or however that goes, the other way around.

Prosecutor: I don't know.

Baker: Yeah, well, . . .

Judge: You're better off to spend the money and cover yourself.

Baker: I don't have the money to spend.

Judge: Well, you're entitled to a court appointed attorney . . .

Baker: Well then . . .

Judge: . . . if you qualify. If you don't qualify, then you have money to spend.

Baker: Whatever it comes down to, I'll be here in Court and I'll, if I have to represent myself I guess I'll have to do it.

This colloquy was succeeded by a discussion of the fact that Baker lacked funds to pay the $150 fine imposed on the count to which he pleaded guilty; the judge advised Baker to see the clerk and set up a payment schedule.

The trial date arrived, and Baker, not surprisingly, had secured no counsel. At the inception of trial, the following exchange occurred:

Judge: I just want to confirm on the record that you have previously been advised of your right to counsel. Is that correct?

Baker: Yes.

Judge: And you understand those rights at this time?

Baker: Yes.

Judge: And at this time it's your own election to appear without a counsel, is that correct?

Baker: Yes.

The trial then commenced.

Apparently, Baker did approach the court clerk at one time and sought to have an attorney appointed. There were conflicting assertions concerning whether he was told he was unqualified, was told he was too late, or was given forms. Regardless of that question, Baker's court proceedings do not meet the standards set by the Supreme Court for advice to the right of counsel and knowing and intelligent waiver of counsel.

"If the accused . . . is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." *Johnson v. Zerbst,* 304 U.S. at 468, 58 S.Ct. 1019. The transcripts quoted above indicate that, at the very least, Baker was uncertain about his right to secure appointed counsel. He appeared to accept the fact that, because he did not have money, he would have to represent himself. The judge did not clearly and unequivocally advise him to the contrary, as he had a duty to do.

---

1. The underlined phrase was not in the state transcript; it was replaced by "unintelligible." The magistrate judge found, however, that the tape of the proceedings demonstrates that Baker made the reference to appointed counsel. The district court did not take issue with that finding.

To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Von Moltke,* 332 U.S. at 723–24, 68 S.Ct. 316 (footnote omitted). Certainly the trial judge's perfunctory questions seeking an assurance from Baker that he had been advised of his right to counsel do not begin to meet this standard. There was never a "penetrating and comprehensive examination" of the circumstances of Baker's waiver of counsel; there was virtually no examination at all.

Baker ended up representing himself, as was his right under *Faretta.* But his waiver of the right to counsel and his election to represent himself had to be made "knowingly and intelligently." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. In electing to represent himself, if election it was, Baker was certainly not "voluntarily exercising his informed free will." *Id.* Baker made it distressingly clear that he was going to represent himself because he had no funds. His right to appointed counsel was never adequately explained to him. Baker's trial simply did not meet the standards for waiver of counsel established by the Supreme Court. I would therefore reverse the district court's judgment and remand with instructions to issue the writ.