Donald A. WATSON, Petitioner— Appellant,

v.

Linda CLARKE, Warden, Respondent— Appellee.

No. 01–15477.

D.C. No. CV–97–00903–FCD.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Decided Jan. 9, 2002.

Before HUG, D.W. NELSON, and HAWKINS, Circuit Judges.

## MEMORANDUM *

■ Donald Watson claims that his plea agreement guaranteed him a maximum parole term of seven years. Now that he understands that he is in fact subject to the possibility of lifetime parole, he claims that the State has breached his plea agreement. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

As the district court found below, there is simply no evidence to indicate that a seven year parole term was a part of the plea agreement between Watson and the State. The sole reference to parole in the written plea agreement appears in subparagraph (b). While it is true that this provision does refer to a 3–year parole term, this reference is followed by an asterisk that advised Watson of the life sentence exception to the normal 3 year parole term under California law. *See* Cal.Penal Code § 3000(b) (1988) (setting the parole term for inmates except those imprisoned for second degree murder and subject to a life sentence). In addition, the plea agreement session with the prosecution was videotaped, and the district court below found that the "videotape shows no discussion of a parole term, parole eligibility, or parole consequences." Indeed, the district court went on to state that to the extent there was *any* evidence of an agreement about parole, the agreement was that the parole term be in accord with the relevant requirements of California law. Because Watson is subject to lifetime parole as California law requires, his claim

that the state breached his plea agreement must be rejected.

■ Watson also argues that his confusion with respect to the true parole term renders his guilty plea involuntary. To be consistent with due process, Watson must have been fully aware of the direct consequences of his guilty plea. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The California state courts concluded that Watson's plea satisfied this due process standard.

An independent review of the record shows that the state courts' conclusion was not based on an unreasonable application of clearly established Supreme Court law.[1] The Supreme Court has never clearly established that a parole term is a direct consequence of a guilty plea with which a defendant must be fully aware. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary . . . ."); *cf. Lane v. Williams,* 455 U.S. 624, 630, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (the majority stated it was assuming, but not deciding, that failure to advise of a mandatory parole term rendered a guilty plea constitutionally invalid). The state courts' decisions were not an unreasonable application of clearly established Supreme Court law because no clearly established Supreme

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We note here that the district court should not have relied on *Carter v. McCarthy,* 806 F.2d 1373 (9th Cir.1986), as controlling authority in its analysis. Section 2254(d) makes clear that habeas relief cannot be granted

unless a state court decision unreasonably applied "clearly established Federal law, *as determined by the Supreme Court of the United States . . . .*" 28 U.S.C. § 2254(d) (emphasis added); *Moore v. Calderon,* 108 F.3d 261, 264 (9th Cir.1997) ("A state court decision may not be overturned on habeas review, for example, because of a conflict with Ninth Circuit-based law. . . .").

Court law exists to support Watson's claim.

■ We also agree with the California state courts and the district court that Watson's third claim, for ineffective assistance of counsel, does not succeed. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Watson must first show that Sandler's performance fell below an objective floor of reasonableness. *Id.* at 687–88, 104 S.Ct. 2052. The state has conceded that Watson was inaccurately advised as to his parole period. We assume for the sake of argument that this misadvisement is sufficient to carry Watson's burden under *Strickland's* first prong. *But cf. Lockhart,* 474 U.S. at 60, 106 S.Ct. 366 (finding it unnecessary to decide whether there may be circumstances where erroneous advice by counsel as to parole eligibility constitutes ineffective assistance).

Where Watson's ineffective assistance claim fails is on the required showing of prejudice from Sandler's incorrect advice. A defendant establishes prejudice by showing "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. Watson claims that but for Sandler's assurances that he would do no more than seven years on parole (after about eight years in prison), he would not have pled guilty. A review of the record, however, belies Watson's counterfactual claims of prejudice due to his attorney's error.

First, Watson undisputedly knew that he was pleading to second degree murder, which carried a sentence of 15 to life. Watson therefore pled guilty knowing there was a possibility (however remote) that he would be in prison for life and would never be able to go back to North Carolina. His claim that lifetime parole would have been a dealbreaker-even though he did plead guilty facing a possible life sentence-therefore seems dubious.

Second, it's reasonable to conclude that Watson would have taken the deal even if correctly advised because "lifetime parole" is a bit of a misnomer in Watson's case. More specifically, California law mandates that individuals convicted of second degree murder and subject to life-term parole will in fact be discharged from parole after five years unless good cause is found to retain the individual. *See* Cal.Penal Code § 3000.1(b)(1988). Had Sandler correctly advised Watson, he would have known this. And as the district court explained, because California law did not preclude Watson from ever being released from parole, the foundation for his claim of prejudice-that he would not have pled guilty knowing he would never be released from parole-vanishes.

AFFIRMED.