**Michael M. FURMAN, Petitioner–Appellant,**

v.

**Tana WOOD, Respondent–Appellee.**

No. 97–36102.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1998.

Opinion Decided March 30, 1999.

Opinion Withdrawn Sept. 1, 1999.

Decided Sept. 1, 1999.

Before: CANBY and TASHIMA, Circuit Judges, and TAKASUGI,[1] District Judge.

## ORDER

CANBY, Circuit Judge:

The petition for rehearing of appellant Furman is GRANTED. The opinion of this court filed on March 30, 1999, and reported at 169 F.3d 1230, is hereby WITHDRAWN. The opinion attached hereto is ORDERED FILED.

## OPINION

Washington state prisoner Michael Furman was tried by a death-qualified jury despite the fact that he was not subject to a potential death penalty. He also contends that he was denied a fair trial because of prosecutorial misconduct and that his trial counsel rendered ineffective assistance. His habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). We conclude that the decisions of the Washington state courts rejecting Furman's claims were neither contrary to, nor unreasonable applications of, clearly established federal law as determined by the Supreme Court. *See id.* § 2254(d)(1).

## BACKGROUND

Furman raped, robbed, and beat to death an eighty-five-year-old woman in her home. He was convicted of aggravated first degree murder and sentenced to death in Washington state court, but this sentence was vacated on direct appeal by the Washington Supreme Court on the ground that the state's death penalty statute did not apply to minors. *See State v. Furman*, 122 Wash.2d 440, 858 P.2d 1092 (1993) (en banc). Furman subsequently was sentenced to life imprisonment without the possibility of parole. His petition for post-conviction relief was dismissed by

Rita J. Griffith, Seattle, Washington, for the petitioner-appellant

Paul D. Weisser, Assistant Attorney General, Olympia, Washington, for the respondent-appellee.

---

1. The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation.

the Washington Court of Appeals, and the Washington Supreme Court denied review.

Furman filed this 28 U.S.C. § 2254 petition in district court in December 1996. He claims that he was denied due process of law because he was tried by a death-qualified jury although he was not eligible for the death penalty. He also raises claims of prosecutorial misconduct and ineffective assistance of counsel. The district court denied his petition and granted a certificate of appealability, and Furman appeals.

## DISCUSSION

### 1. Trial by a Death–Qualified Jury

■ Because this petition was filed after April 24, 1996, it is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. See Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). The Washington Court of Appeals in collateral proceedings rejected Furman's claim that his trial by a death-qualified jury[2] violated the Fourteenth Amendment's due process guarantee. We will disturb this decision only if it was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1).

To date, we have not defined the term "unreasonable application" as used in § 2254(d), nor have we explained the difference between "contrary to" and "unreasonable application of," as used in that section. Clearly, however, both terms reflect the same general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court. Moreover, as some circuits have correctly pointed out, the statutory terms are not amenable to a rigid distinction, see, e.g., O'Brien v. Dubois, 145 F.3d 16, 22

(1st Cir.1998), and have "overlapping meanings," Green v. French, 143 F.3d 865, 870 (4th Cir.1998).

Davis v. Kramer, 167 F.3d 494, 500 (9th Cir.1999), pet. for cert. filed, 67 U.S.L.W. 3570 (Mar. 8, 1999). We accordingly measure the state court's ruling in Furman's case to see whether it violates either standard. See id.; see also Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888–89 (3d Cir.1999) (en banc), cert. denied, — U.S. —, 120 S.Ct. 73, — L.Ed.2d —, (1999); O'Brien v. Dubois, 145 F.3d 16, 22–23 (1st Cir.1998).

■ We may not cause the writ to issue unless "the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." Moore v. Calderon, 108 F.3d 261, 264 (9th Cir.1997) (emphasis added). Furman cites two United States Supreme Court decisions that address the death qualification of juries: Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). Our inquiry is centered on these cases.

McCree holds that death qualification does not deny the capital defendant a fair guilt phase trial. The Court found no support for the proposition that death qualification produces a jury that is conviction-prone. See McCree, 476 U.S. at 168–173, 106 S.Ct. 1758. Indeed, to the extent that attitudes toward the death penalty influence deliberations, the Court found greater cause for concern in the prospect that jurors who are hostile to the death penalty may be acquittal-prone. See id. at 172, 106 S.Ct. 1758. Furthermore, the Court ruled that, even if it is assumed that death qualified jurors are conviction-prone, the presence on the jury of jurors who are opposed to the death penalty is not pro-

---

**2.** That is, a jury from which prospective jurors who are biased against the death penalty have been excluded.

tected by the fair-cross-section requirement. *See id.* at 174–77, 106 S.Ct. 1758.

Finally, the Court rejected the argument that death qualification denies the defendant an impartial jury. It again assumed that death qualification affects certain deliberations, noting that it had invalidated sentencing schemes that remove all jurors who express any scruples against the death penalty in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The Court distinguished those cases on the basis that the constitutional error in those cases affected only the penalty phase, but not the guilt phase, where the jury's discretion is more closely channeled. *See id.* at 183, 106 S.Ct. 1758.

■ *Buchanan* tracks *McCree*'s analysis. It holds that death qualification does not violate the rights of a non-capital defendant tried jointly with a capital defendant. The Court again rejected a fair-cross-section challenge to death qualification, *see Buchanan,* 483 U.S. at 416, 107 S.Ct. 2906. And the Court rejected a partiality argument, noting that *McCree* had found that to the extent that death qualification affects deliberations, it does so at the penalty phase, not at the guilt phase, where jury discretion is closely channeled. Death qualification therefore does not affect the rights of a non-capital defendant. *See id.* at 420, 107 S.Ct. 2906.

*Buchanan* did point out that the state has a legitimate interest in trying some defendants jointly. *See id.* at 418–19, 107 S.Ct. 2906. Furman contends that it was only because of this interest that death qualification was allowed in that case for the non-capital defendant. The Supreme Court, however, did not make this point a basis for its decision in *Buchanan.* It simply indicated that the state had reasons for trying the defendants jointly. Furman would read into this a rule by negative implication that trial of a non-capital defendant by a death-qualified jury requires a compelling state interest. This negative implication, however, hardly qualifies as

"clearly established" law within the meaning of 28 U.S.C. § 2254(d)(1). Because the Washington Court of Appeals' rejection of Furman's death qualification claim is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, we may not disturb the Washington Court's judgment.

### 2. *Remaining Issues–Certificate of Appealability*

■ Before addressing the additional issues raised by Furman, we face a threshold question. The State argues that the Certificate of Appealability was granted only as to Furman's death qualification claim, not his prosecutorial misconduct and ineffective assistance claims. The district court's order states, "For the reasons set forth in the Magistrate Judge's Report and Recommendation ..., the petitioner has made a substantial showing of the denial of a constitutional right, particularly the issue of death qualification of the jury when he was not eligible for the death penalty."

Although the district court's order emphasizes the death qualification claim, it does not purport to exclude the other claims. The referenced Magistrate's report addresses all three claims. We construe the district court's certificate liberally and find that all three issues were certified. We thus reach the merits of Furman's prosecutorial misconduct and ineffective assistance claims, without the necessity of Furman's moving to have us certify them. *See* Ninth Circuit Rule 22–1; *see also United States v. Cruz–Mendoza,* 163 F.3d 1149, amending 147 F.3d 1069 (9th Cir.1998).

### 3. *Prosecutorial Misconduct*

■ Furman argues that several comments of the prosecutor amounted to prosecutorial misconduct that deprived him of the right to a fair trial. He points to several instances in the record: (1) the prosecutor during opening statement made repeated references to "twisted, and ugly,

and vicious" conduct of the defendant, despite repeated objections that were sustained; (2) the prosecutor inquired whether Furman had been a hyperactive child, suggesting that amphetamines have a reverse effect on such children (thus discrediting Furman's contention that he was too intoxicated by "speed" to premeditate); (3) the prosecutor asked Furman whether, during the 100 times he had taken "speed," this was the only time he had killed anyone; and (4) the prosecutor referred to Furman as a "con artist."[3]

The Washington Supreme Court on direct appeal rejected Furman's prosecutorial misconduct claim:

> We have reviewed the entire transcript of the questioning [by the prosecutor.] ... None of the claimed guilt phase prosecutorial misconduct prejudiced appellant's right to a fair trial.... Both the nature of that questioning and the strength of the State's evidence are quite different than in *State v. Reed*, 102 Wash.2d 140, 684 P.2d 699 (1984), [ (finding prejudicial prosecutorial misconduct) ].

*State v. Furman*, 122 Wash.2d at 455, 858 P.2d at 1101. This issue, too, is governed by the amendments to 28 U.S.C. § 2254 effected by the Antiterrorism and Effective Death Penalty Act of 1996. There being no dispute as to the relevant legal standard, the Washington Supreme Court's conclusion will be disturbed only if it is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or if it is based on an unreasonable determination of the facts as presented in the state court proceedings, *id.* § 2254(d)(2).

■ Many of the prosecutor's comments were improper, and the prosecutor persisted in some of them despite several objections that were sustained. Prosecutorial misconduct, however, does not automatically invalidate a conviction. It is a

ground for relief if it "so infected the trial with unfairness as to make the resultant conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In determining that question, it is appropriate to consider whether the jury was instructed to decide solely on the basis of the evidence rather than counsel's arguments, and whether the state's case was strong. *See id.* at 182, 106 S.Ct. 2464.

The Washington Supreme Court, in ruling on another issue, stated:

> The only disputed issue in the guilt phase was whether [Furman] premeditated the murder. The clearest evidence on that question was [Furman's] confession. He described repeatedly leaving the room, getting new weapons, and returning to continue the attack. He also related using cloths to prevent leaving fingerprints. Finally, he said he hit the victim with the crystal vase because she was still alive and he did not want her to be a witness.... [T]his confession ... describes a clearly premeditated murder, committed by a person fully aware of the consequences of his actions....

*State v. Furman*, 122 Wash.2d at 453, 858 P.2d at 1100; *see also id.* at 455, 858 P.2d at 1101 ("several neighbors who saw [Furman] shortly before the murder noticed no [drug] impairment, and he admitted in his confession that he killed the victim because he did not want her to be a witness.")

In this case the jury was told by the prosecutor himself that his arguments are not evidence. The Washington Supreme Court's finding that the evidence of premeditation was strong is not unreasonable. Its conclusion that the prosecutor's occasional but perseverant indiscretions did not so prejudice the jury as to deny Furman due process was neither contrary to nor an unreasonable application of the Supreme Court's *Darden* standard. We

---

**3.** Furman makes a passing reference to other alleged instances of misconduct, but does not explain how they are misconduct and it is not

clear that they could be so or are other than trivial.

therefore may not overturn the ruling. 28 U.S.C. § 2254(d)(1), (2).

### 4. *Ineffective Assistance of Counsel*

 To buttress his claim that he was too intoxicated on the day of the murder to be held accountable for his behavior, Furman called a psychological expert who testified that drugs had rendered him unable "to reflect, or consider or deliberate[ ] about the mechanics of his actions." The expert also testified that Furman had told him that up to the day of the murder he had been smoking half an ounce, or $80 worth, of crystal a day.

A prosecution expert then testified that half an ounce of "speed" would cost between $500 and $1000, and that half a *gram* would cost $80. Another prosecution expert testified that smoking half an ounce of speed a day would certainly kill a person. In response, the defense called another witness who testified that it is possible for a person to smoke half an ounce of speed a day. The defense did not otherwise allude to the issue of the amount of speed Furman smoked. In closing arguments, the prosecutor contended that it was extremely unlikely that Furman was smoking half an ounce a day, and argued that Furman acted deliberately on the day of the murder.

Furman now contends that he was denied effective assistance of counsel by his counsel's failure to clarify to the jury that his expert simply had misnoted that Furman smoked half an ounce, rather than half a gram, of speed a day. Furman argues that this error injured his credibility and undermined his defense.

The Washington Court of Appeals rejected this claim in post-conviction proceedings. First it found that Furman was not prejudiced, because

> realizing that [Furman's] drug habit cost $80 per day and that methamphetamine costs $80 per half gram, any reasonable jury would have concluded that [the defense expert] simply made an incorrect notation.

Second, it found that defense counsel's decision not to return to the issue of the amount of speed was tactical. It quoted counsel's averment that:

> At the time of this cross-examination, I had knowledge that [the expert's] ½ ounce notation was in error. I made a tactical decision not to address this issue during my examination because I was afraid the jury would either believe that Mr. Furman was lying about his drug use or that [the expert] was not careful in noting the information down. In either case, the defense case would be weakened. By not addressing the issue during redirect, I attempted to minimize the impact of the "½ ounce evidence."

 Relief will be granted if counsel's performance fell outside a wide range of reasonableness and defendant was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's tactical decisions are "virtually unchallengeable." *Id.* at 690, 104 S.Ct. 2052.

The state court concluded that Furman was not prejudiced by his attorney's failure to return to the ½ ounce issue, because the jury must have understood that a mistake as to amount had been made. That conclusion was neither contrary to *Strickland* nor an unreasonable application of the *Strickland* prejudice standard. The same is true of the state court's conclusion that the attorney's decision was tactical. Because the Washington Court of Appeals' ruling was neither contrary to, nor an unreasonable application of, the *Strickland* standard, we are barred from granting relief on Furman's petition. *See id.* § 2254(d)(1).

### CONCLUSION

The judgment of the district court denying Furman's petition for a writ of habeas corpus is

**AFFIRMED.**