**Ronald D. BAKER, Petitioner–Appellant,**

v.

**CITY OF BLAINE; Louanne Cranefield, Respondents–Appellees.**

No. 98–35378.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 10, 1999.[*]

Filed March 6, 2000.

ed something, not knowledge of the fact that what is provided in fact constitutes material support.

[*] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a).

Sheryl Gordon McCloud, Seattle, Washington, for the petitioner-appellant.

Matthew S. Elich, Nelson, Brinson & Elich, Bellingham, Washington, for the respondents-appellees.

Before: CANBY, BRUNETTI and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Dissent by Judge CANBY.

O'SCANNLAIN, Circuit Judge:

We must decide whether a state court's decision that a defendant was not denied his Sixth Amendment right to counsel is contrary to clearly established federal law.

I

On July 17, 1993, Ronald M. Baker was arrested on charges of driving without a valid operator's license ("DVOL"), driving under the influence of alcohol ("DUI"), and obstructing a public officer in Blaine, Washington. He pleaded guilty to the DVOL charge and was convicted of the other two by jury trial, at which he represented himself. He appealed his convictions (but not his guilty plea) through the

Washington state court system, claiming that the court denied him his Sixth Amendment right to counsel at the arraignment and that he had not validly waived his right to counsel at his subsequent jury trial. He lost at all levels. He then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court and alleged that he had been denied his right to counsel. A magistrate recommended granting the writ, but the City of Blaine ("City") filed objections noting discrepancies in the transcripts, and the district court dismissed Baker's petition. Baker timely brought this appeal.

## II

▮▮▮▮ Baker, who appeared *pro se* at his jury trial, first asserts that (1) the trial court violated his Sixth Amendment right to counsel at arraignment and (2) he did not waive his right to counsel throughout the trial proceedings. Baker's petition was filed after April 1, 1996, and therefore is subject to amendments made by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).[1] The district court's review was limited to the standards of review set out in the AEDPA, applied as adopted by this court in *Moore v. Calderon*, 108 F.3d 261, 265 n. 3 (9th Cir.), *cert. denied*, 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Under *Moore*, questions of law are governed by the "contrary to" clause of the AEDPA, whereas mixed questions of law and fact are governed by the "unreasonable application of" clause.[2] *See id.*

1. 28 U.S.C.A. § 2254(d) (Supp.1999) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2. In *Davis v. Kramer*, 167 F.3d 494 (9th Cir. 1999), a panel of this court cast doubt on the distinction between the "contrary to" and "unreasonable application of" prongs of the analysis under AEDPA. *Id.* at 500. First, we note that despite the possible confusion sown by *Davis*, district courts continue to rely on the *Moore* dichotomy. *See, e.g., Atwood v. Warden*, 1999 WL 390852 at *5 (N.D.Cal. 1999); *Donaghe v. Galaza*, 1999 WL 498235 at *7 (N.D.Cal.1999). More importantly, a later panel has no authority to disavow the holdings of an earlier panel, particularly in the absence of changes in binding precedent that would necessitate such a shift; only the court sitting en banc has such power. Thus, *Moore* remains the law in the Ninth Circuit and we apply it here. Contrary to the *Davis* assertion, as well as that in footnote 4 of the dissent, it is hard to conceive that the *Moore* language can sincerely be read as dicta: "The timeliness of a *Faretta* request is a question of law. Since the 'contrary to' language governs questions of law, and the 'unreasonable application of' language governs mixed questions of law and fact, we apply only the 'contrary to' language." *Moore*, 108 F.3d at 265 n. 3. We need not, however, call for en banc review to resolve the conflict between *Moore* and *Davis* because use of either standard would not change the outcome of this case. *See Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir.1999) (comparing *Moore* with *Davis* and noting that "[t]his court has not yet set out a clear distinction of how to conduct § 2254(d) review," but declining to resolve the issue because it was unnecessary to do so to decide the case). We note that Judge Canby seems to have done the same when the panel amended *Furman v. Wood*, 169 F.3d 1230 (9th Cir.1999) (*"Furman I"*), *superseded by*, 190 F.3d 1002 (*"Furman II"*) (Canby, J.), to replace references to *Moore* with references to *Davis* without calling for en banc review. *Compare Furman I*, 169 F.3d at 1232 ("We previously have determined that the standard of 'unreasonable application of [ ] clearly established Federal law' in the new § 2254 governs mixed questions of law and fact, while the standard of 'contrary to ... clearly established Federal law applies to pure questions of law. *See Moore* ....") *with Furman II*, 190 F.3d at 1004 ("To date, we have not defined the term 'unreasonable application' as it is used in § 2254(d), nor have we explained the difference between 'contrary to' and 'unreasonable application of'.... *See Davis* ...."). The dissent indicates that the standard it applies does not affect its view of the merits of the case. Like previous panels, we leave the resolution of the conflict caused

■ Here, the Washington Supreme Court ruled that Baker's arraignment was not a critical stage of the proceedings to which the right to counsel attached. *See White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *State v. Jackson*, 66 Wash.2d 24, 400 P.2d 774, 778 & n. 1 (Wash.1965). The record reveals that, although Baker pleaded guilty at his arraignment to one charge of driving without a valid operator's license, he has never contested nor appealed that conviction, and nothing else that occurred at arraignment was material to later trial proceedings. Thus, Baker had no constitutional right to counsel at his arraignment of which he could have been deprived.

■ The Washington Supreme Court also ruled that (1) the trial court adequately advised Baker before trial of his right to counsel and to court-appointed counsel if he could not afford to hire an attorney; (2) the trial court adequately warned Baker of the dangers and disadvantages inherent in proceeding without counsel; and (3) Baker knowingly and intelligently waived his right to counsel. The transcript reveals that Baker was advised before trial of the disadvantages and risks of representing himself. The trial judge warned Baker that the charges he faced were serious and repeatedly advised him to seek representation. Baker stated he would represent himself "if I have to." Immediately before trial, when asked whether he had been previously advised of his right to counsel and if it was his own choice to appear without counsel, Baker answered "yes."

■ The dissent essentially argues that Baker's waiver of his right to counsel was not "knowing and intelligent" because the trial court erred in failing to make clear to Baker that he had a right to appointed counsel if he could not afford one. We are satisfied that the record leaves little doubt that Baker was well aware of this right. First, the transcript reveals that Baker asked the court to appoint counsel for him. The judge responded that "you're entitled to a court appointed attorney if you qualify." As the judge explained, if Baker qualified financially for counsel, he would appoint one. If he did not, it would mean he could afford one. The court admonished Baker not to represent himself because of the seriousness of the charges and the difficulties of trying a case. Second, Baker went to the court clerk to request appointed counsel, an indication that he knew that he had the right to one. According to Baker, he was told by the clerk that he made too much money to qualify for counsel. In fact, much of this debate over whether Baker was adequately informed of his right to appointed counsel may be academic given the district court's finding that "Baker did *not* qualify for court-appointed counsel at the time of his trial." (emphasis in the original).[3] Third, when determining whether a defendant has knowingly and intelligently waived his rights, a court may look to the defendant's background, conduct, and prior familiarity with the criminal justice system. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). As the

by *Davis* to a time when the standard applied would alter the outcome of the case.

3. The dissent asserts that this quotation "is not a factual finding that Baker had sufficient resources to hire counsel." At the very least, however, the statement indicates that Baker did not establish his financial eligibility for court-appointed counsel. After stating the Magistrate Judge's "erroneous factual impression" that " 'Petitioner was indigent at the time of his trial and was therefore entitled to court appointed counsel,' " the district court reported Blaine's argument that Baker never submitted the paperwork required to receive

counsel. It then stated that "Contrary to the magistrate judge's assertions, Baker did *not* qualify for court-appointed counsel at the time of his trial. While Baker may have believed that he should have qualified and that he could not afford to retain private counsel, he is not challenging the court's administrative procedures for determining indigency." District Court Order Granting Respondents' Motion for Summary Judgment and Dismissing Habeas Corpus Petition, March 9, 1998, at 8. Most importantly, this entire discussion regarding Baker's attempts to procure court-appointed counsel highlights that Baker was well aware of his right to one.

district court noted in finding Baker's waiver to have been knowing and intelligent, he had been previously convicted of driving under the influence, one of the same charges he faced in the trial of this case. Baker's conduct and the trial judge's statements demonstrate that Baker knew that if he qualified financially he had the right to appointed counsel. Thus, the district court did not err when it found that the state court decisions concluding that Baker knowingly and intelligently waived his right to counsel were not contrary to clearly established federal law. *See Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

### III

Baker next asserts that the district court erred when it denied him an evidentiary hearing at which he could develop the factual basis for his habeas relief claims. This assertion is frivolous, because Baker himself canceled the hearing that had been scheduled.

### IV

■ Finally, Baker asserts that the district court applied the wrong standard of review when it deferred to the state court decisions. According to Baker, the district court should have reviewed *de novo* any state court holdings not supported by explicit citations to federal law. As noted above, the district court complied with the deferential standards required under the AEDPA as applied by this court in *Moore, supra,* 108 F.3d at 265 n. 3. The state court decisions to which the district court gave deference either cited directly to opinions of the Supreme Court of the United States or to cases which themselves rested on Supreme Court precedent, and the state court holdings were consistent with the reasoning of the cited cases. Thus, the district court did not err in

applying the deferential standard of review.

The decision of the district court is AFFIRMED.[4]

CANBY, Circuit Judge, dissenting:

With all respect, I am unable to concur in the majority opinion and judgment. My disagreement is both procedural and substantive.

### I

The procedural issue involves application of Congress's language in AEDPA prohibiting the granting of a writ of habeas corpus unless the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; ...

28 U.S.C. § 2254(d)(1).

The majority opinion adheres to a dichotomy of review under this provision, which is set forth in a footnote in *Moore v. Calderon,* 108 F.3d 261, 265 n. 3 (9th Cir.), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Under that formulation, "the 'contrary to' language governs questions of law, and the 'unreasonable application of' language governs mixed questions of law and fact." *Id.* This formulation, however, was described as "dicta" in *Davis v. Kramer,* 167 F.3d 494, 500 n. 7 (9th Cir.1999), *pet. for cert. filed,* —— U.S. ——, 120 S.Ct. 1001, —— L.Ed.2d —— (2000), and the dichotomy was disavowed. *Davis* stated:

The terms overlap, and cases may fall into one or both classifications, depending on the circumstances. No purpose would be served by attempting to establish a fixed division or to give meaning

---

4. Baker filed documents entitled Motion for Full Remand (June 1, 1999); Motion to Proceed Pro Se (August 2, 1999), and Motion to Delay Decision (September 17, 1999), which were referred to this panel for disposition.

To the extent that our affirmance of the district court does not dispose of these (and any other) pending motions, they are hereby denied.

to one that would exclude the other. Their purpose is the same: to ensure the objective that state courts follow controlling Supreme Court law.

*Id.* at 500 (footnote omitted). *Davis* now stands as the law of this circuit; I therefore consider myself bound by its conclusion that the *Moore* reference was dictum and that no firm dichotomy is to be applied in reviewing state decisions under AEDPA. I am equally bound by our subsequent case that accepted *Davis*'s approach. *See Furman v. Wood,* 190 F.3d 1002, 1004 (9th Cir.1999) (on rehearing).

If, contrary to my understanding, the statements in *Davis* and *Furman* may be viewed as dicta like that in *Moore,* and thus do not bind me, then I would elect to follow the *Davis* approach.[1] Section 2254(d)(1) does not set up separate categories of review to which each of its clauses applies; it says nothing about "questions of law" or "mixed questions of law and fact." I see no good reason to limit the application of either statutory clause to a specific type of issue. The First and Fourth Circuits are of the same view, and have rejected the dichotomy. *See O'Brien v. Dubois,* 145 F.3d 16, 22 (1st Cir.1998); *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999); *see also*

*Matteo v. Superintendent,* 171 F.3d 877, 887–89 (3d Cir.) (en banc), *cert. denied,* —— U.S. ——, 120 S.Ct. 73, 145 L.Ed.2d 62 (1999).[2]

On the other hand, if the majority is correct in viewing *Moore*'s adoption of the dichotomous approach as holding, then the adoption of the contrary approach in *Davis* and its progeny is equally so. In that case, we are not free simply to disregard *Davis* and apply *Moore;* we are bound to review the case en banc and adopt one or the other approach as that of our court. *See Atonio v. Wards Cove Packing Co.,* 810 F.2d 1477, 1479 (9th Cir.1987) (en banc) ("We now hold that the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision. A panel faced with such a conflict must call for en banc review...."). Particularly is this so when one of our later decisions has adopted the *Davis* approach.[3] *See Furman,* 190 F.3d at 1004 [4] I therefore am unable to join the majority in its rejection of *Davis.*

**II**

On the merits, I view the state court decision as either contrary to, or an unreasonable application of, Supreme Court law, or both, as that law is set forth in *Johnson*

1. One reason that it is somewhat difficult to tell whether the adoption of one or the other approach constitutes dictum is that, like so many applications of a standard of review, it frequently makes no difference at all in the outcome of the case. That may well be the case here, and for that reason I raise the issue with some reluctance. It is, however, a threshold question affecting the discussion of the merits, and the majority opinion squarely adopts the dichotomy and applies one of its branches to the exclusion of the other. I therefore feel compelled to address the matter.

2. Other circuits earlier adopted the dichotomy. *See Neelley v. Nagle,* 138 F.3d 917, 924 (11th Cir.1998); *Drinkard v. Johnson,* 97 F.3d 751, 767–68 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). The First Circuit discusses at length its reasons for not accepting their position. *See O'Brien,* 145 F.3d at 22–23.

3. The majority opinion, in its footnote 2, states that en banc review is not necessary when use of either standard would not affect the outcome of the case. It cites *Wilson v. Henry,* 185 F.3d 986, 988 (9th Cir.1999) in support. But *Wilson* found it unnecessary to choose sides in the conflict in order to decide the case before it. The majority here does not take that approach, but instead adopts *Moore*'s dichotomy and rejects the later, conflicting holding in *Davis.* That the majority may not do.

4. The majority opinion, in its footnote 2, incorrectly surmises the reason that I saw no need for en banc review when I joined in amending *Furman v. Wood* to accord with *Davis v. Kramer.* I saw no need for en banc review because, as I explain at the beginning of this dissent, I consider *Davis* to have established that the language of *Moore v. Calderon* setting out the dichotomous approach was dictum.

*v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). To illustrate why, I set forth the pertinent facts from the state court proceedings.

At Baker's arraignment, the state judge announced to several defendants a list of rights they enjoyed. No mention was made of the right to counsel. Baker then was asked to plead, and he pleaded guilty to driving without a valid license, but not guilty of driving while intoxicated and obstructing an officer. He stated that he would like a jury. The following exchange is the entire discussion of counsel:

> Judge: And what do you anticipate doing with regard to counsel?
>
> Baker: I'll get a lawyer.
>
> Judge: Ok.
>
> Baker: If not, I'll defend myself.

The arraignment ended. As the majority indicates, Baker was not prejudiced directly at the arraignment, because he pleaded guilty only to a charge that he has never contested. The total lack of advice regarding a right to counsel had a continuing effect, however, for it was never properly remedied prior to or during trial.

At Baker's pretrial hearing, Baker made clear that he was without funds, but he was not adequately advised of his right to appointed counsel. Here is the entire exchange at that hearing:

> Judge: Okay, Mr. Baker, I take it that nothing has been resolved here. I again would advise you that you have very serious charges and you're ill advised to try to represent yourself on them and that you're certainly not equipped to properly handle the jury trial on these charges, you would not know the proper objections to make or how to preserve the record for any appeal and I'm urging you to hire an attorney to represent you in this matter.

> Baker: I wish I could, if I had the money.
>
> Judge: Well, the money of being convicted when, perhaps you wouldn't be convicted, or not knowing your options, um, could cost you a heck of a lot more than an attorney costs you, so my advice to you is to hire an attorney. You're not equipped to handle a jury trial. You can do it if you choose, but I'm just telling you that's [sic] it's not a very smart move for you to make.
>
> Baker: I know. If you want to <u>appoint me a public defender</u>.[5]
>
> Judge: Pound wise and penny poor, or however that goes, the other way around.
>
> Prosecutor: I don't know—
>
> Baker: Yeah, well,—
>
> Judge: You're better off to spend the money and cover yourself.
>
> Baker: I don't have the money to spend.
>
> Judge: Well, you're entitled to a court appointed attorney if you qualify. If you don't qualify, then you have money to spend.
>
> Baker: Whatever it comes down to, I'll be here in Court and I'll, if I have to represent myself I guess I'll have to do it.

This colloquy was succeeded by a discussion of the fact that Baker lacked funds to pay the $150 fine imposed on the count to which he pleaded guilty; the judge advised Baker to see the clerk and set up a payment schedule.

The trial date arrived, and Baker, not surprisingly, had secured no counsel. At the inception of trial, the following exchange occurred:

> Judge: I just want to confirm on the record that you have previously been advised of your right to counsel. Is that correct?
>
> Baker: Yes.

---

**5.** The underlined phrase was not in the state transcript; it was replaced by "unintelligible." The magistrate judge found, however, that the tape of the proceedings demonstrates that Baker made the reference to appointed counsel. The district court did not take issue with that finding.

Judge: And you understand those rights at this time?

Baker: Yes.

Judge: And at this time it's your own election to appear without a counsel, is that correct?

Baker: Yes.

The trial then commenced.

Apparently, Baker did approach the court clerk at one time and sought to have an attorney appointed. There were conflicting assertions concerning whether he was told he was unqualified, was told he was too late, or was given forms. The majority opinion states that the debate over whether Baker was properly informed is academic because the district court found that "Baker did *not* qualify for court-appointed counsel at the time of his trial." That finding, however, is not a factual finding that Baker had sufficient resources to hire counsel. The magistrate judge had stated that it was "uncontested that Petitioner was indigent at the time of his trial." The district court said that the magistrate judge had erred because the respondents "assert that Baker did not receive a court-appointed attorney because he never followed up on the required paper work." The district court, however, never resolved the factual dispute; it held no evidentiary hearing and the record fails to establish why an attorney was not appointed. As the magistrate judge explained: "it is unclear whether the trial court knew that Petitioner was indigent because the trial court never asked Petitioner about his financial status and the court encouraged Petitioner to *hire* an attorney, although Petitioner told the trial court that he needed to pay a $150 fine on installments."

As the magistrate judge recognized, however, the important point is that the deficiencies in the trial court's performance meant that Baker's court proceedings did not meet the standards set by the Supreme Court for advice to the right of counsel and knowing and intelligent waiver of counsel.

"If the accused ... is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." *Johnson v. Zerbst,* 304 U.S. at 468, 58 S.Ct. 1019. The transcripts quoted above indicate that, at the very least, Baker was uncertain about his right to secure appointed counsel. He appeared to accept the fact that, because he did not have money, he would have to represent himself. The judge did not clearly and unequivocally advise him to the contrary, as he had a duty to do.

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is rendered.

*Von Moltke,* 332 U.S. at 723–24, 68 S.Ct. 316. Certainly the trial judge's perfunctory questions seeking an assurance from Baker that he had been advised of his right to counsel do not begin to meet this standard. There was never a "penetrating and comprehensive examination" of the circumstances of Baker's waiver of counsel; there was virtually no examination at all.

Baker ended up representing himself, as was his right under *Faretta*. But his waiver of the right to counsel and his election to represent himself had to be made "'knowingly and intelligently.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Johnson*, 304 U.S. at 464–65, 58 S.Ct. 1019). Baker's election to represent himself, if election it was, was certainly not the "voluntary exercise of his informed free will." *Id.* at 835, 95 S.Ct. 2525. Baker made it distressingly clear that he was going to represent himself because he had no funds. His right to appointed counsel was never adequately explained to him. Baker's trial simply did not meet the standards for waiver of counsel established by the Supreme Court. I would therefore reverse the district court's judgment and remand with instructions to issue the writ.